Edward A. Ardolina v. Commissioner.
Ardolina v. Commissioner
Docket No. 16853.
United States Tax Court
1949 Tax Ct. Memo LEXIS 1; 8 T.C.M. (CCH) 1111; T.C.M. (RIA) 49297; December 30, 1949
*1 William A. Schilling, Esq., 744 Broad St., Newark, N. J; and John L. McMaster, Esq., 165 Broadway, New York, N. Y., for the petitioner. Stanley W. Herzfeld, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner attacks respondent's determination of a deficiency of $97,049.79 in income and victory tax for 1943, and a deficiency of $62,878.87 in income tax for 1944. Computation of the deficiency for 1943 involves also the income for 1942, under the Current Tax Payment Act of 1943. The deficiencies result from attributing to petitioner 100 per cent of the net income of an enterprise instead of 50 per cent as he reported. Findings of Fact Petitioner resides in Short Hills, New Jersey, and filed his income tax returns for 1943 and 1944 with the collector for the fifth district of New Jersey. Petitioner married Freda Ardolina in 1919. Both were then employed and continued to work. In 1924 they had a child and Freda gave up outside employment. During the period between 1924 to 1929 petitioner did not earn enough to support the family. Freda made some money stringing beads as "home work" for jewelry stores. In addition the *2 family took in boarders. Petitioner and Freda together rented a house of seven rooms under an oral lease, and turned three rooms into bedrooms for boarders. In this way, during 1924 to 1929, the rent on the house was paid and petitioner was able to save $500. They continued to take in boarders until 1932 or 1933. On May 25, 1929, petitioner, Charles A. Dietz, Ernest Knothe, and Rudolph Molcham organized the Admak Manufacturing Co., Inc., to enter the business of making radio tube parts. Petitioner invested $500. The record does not show how much the others invested. About seven or eight months later Dietz bought out Molcham and Knothe. Petitioner and Dietz operated the business in corporate form until 1934, when the corporation was dissolved and the assets distributed. At some time in 1934 petitioner and Dietz formed a partnership to continue the same business under the name of Admak Manufacturing Co., and each contributed cash and assets. On August 15, 1934, petitioner and Dietz executed articles of partnership which provided, among other matters, that: Petitioner should devote his entire time to the business and be in direct charge of management; Dietz should use his skill in *3 such manner as possible for the interest of the partnership, but he should not be required to devote any time to the business; weekly salaries were to be paid of $50 to Dietz and $160 to petitioner; the net profits were to be apportioned at least once every six months, 40 per cent to Dietz and 60 per cent to petitioner; losses during any six months' period were to be borne equally; all checks required the signature of both partners; consent of both partners was required for the transaction of any extraordinary business; the partners were to share equally in the assets upon termination of the partnership. In 1936 Dietz died. On November 30, 1936, petitioner executed a partnership agreement with Dietz' Estate continuing the business under the same terms, except that checks were to require the signature only of petitioner. On December 1, 1938, these terms were modified by a supplemental agreement to eliminate the payment of any salary to Dietz' Estate and to increase petitioner's salary to $10,000 per year. In May, 1939; petitioner informed Dietz' executors, legatees and beneficiaries that he desired to dissolve the partnership, offering them the choice at book value of buying him out *4 or being bought out. They chose the latter. On May 31, 1939, petitioner bought out Dietz' Estate for $31,342.50 and the partnership was dissolved. On June 1, 1939, petitioner was the sole proprietor of Admak Manufacturing Co. In the fiscal year ended May 31, 1939, the company had earned a net profit before income taxes of $86,151.81. On June 1, 1939, petitioner purported to sell to his wife, Freda, a one-half interest in the business. Freda gave to the company a promissory note for $33,145.54, dated June 1, 1939, payable to the order of the company in two months, and bearing six per cent interest. On the same day petitioner and Freda executed a document, purporting to be a partnership agreement, containing terms similar to the terms of the former agreement between petitioner and Dietz' Estate. The document provided, among other matters, that: Petitioner should devote his entire time to the business and be in direct charge of management; Freda should use her skill in such manner as possible for the interest of the partnership but she should not be required to devote any time to the business; petitioner was to receive an annual salary of $10,000; Freda was to receive no salary; the *5 net profits were to be apportioned at least once every six months and divided equally; losses during any six months' period were to be borne equally; all checks required the signature only of petitioner; consent of both partners was required for the transaction of any extraordinary business; the partners were to share equally in the assets upon termination of the partnership. A certificate of trade name, dated June 1, 1939, signed by petitioner and Freda, and sworn to and subscribed on July 29, 1939, was filed with the Essex County Clerk. On July 28, 1969, the company mailed letters to certain banks, insurance companies, and to the Unemployment Compensation Commission announcing a partnership between petitioner and wife. The books of account of the business reflected the change. All subsequent partnership tax returns treated the wife as a partner and in her returns she reported a share of the profits. On August 31, 1939, petitioner transferred to his wife $33,145.54 in cash, which she used to pay her note to the company. Petitioner filed a gift tax return in which he reported that sum as a gift and paid gift tax. Freda filed a donee's information return. On July 14, 1942, petitioner *6 signed a waiver of restrictions against immediate assessment and collection of a deficiency in gift tax and agreed also not to file or prosecute any claim for refund for gift tax for the year 1939. In 1943 revenue agents examined petitioner's returns for the years 1940 and 1941 and included in petitioner's income all the profits of the company. After protest, petitioner's returns were accepted as filed. Petitioner was aware in 1939 that the total tax payable on income from the business would be decreased if the income were divided between him and his wife. Petitioner continued to direct the operations of the business, managing the factory, getting the business, and running the office. The wife did not render any services to the company and did not participate in the control or management of the business. Subsequent to June 1, 1939, petitioner's wife, Freda, was credited with a one-half share of the profits. She reported that income and paid income taxes thereon. Petitioner continued to support his family. In his individual returns for the years 1942 and 1943 petitioner claimed a credit for his father-in-law, Joseph Besaw, as a dependent. Petitioner stated in each of those returns, *7 as the reason for said support, that his father-in-law was aged and incapable of self-support. In his return for the year 1944 petitioner took an exemption for his father-in-law in the section of the return permitting exemptions for "close relatives with 1944 incomes of less than $500 who received more than one-half of their support from" the taxpayer. Petitioner's wife, Freda, claimed no credits for dependents in her returns for the years 1942 and 1943, and she claimed only a personal exemption in her return for 1944. The business earned net profits, before income taxes and after renegotiation, of $195,396.98 during the fiscal year ended May 31, 1942; $113,448.42 during the fiscal year ended May 31, 1943; and $135,942.02 during the fiscal year ended May 31, 1944. A minor portion of that income came from sources other than its manufacturing business. The business owned the building in which it operated and leased part of the premises, receiving $1,416 in rent in each of those years. The business received $24,000 in dividends during the fiscal year ended May 31, 1942, and $20,000 in dividends during the fiscal year ended May 31, 1943. In July, 1946, the assets of the business were *8 sold for some $675,000. The stipulated facts show that the business earned the following net profit, before income taxes, in each of the five fiscal years before and after May 31, 1939: 1935
$ 21,296.60
1936
45,499.54
1937
59,164.87
1938
20,052.47
1939
86,151.81
1940
115,773.27
1941
106,840.12
1942
195,396.98
1943
113,448.42
1944
135,942.02
Petitioner and his wife did not actually intend to join together as partners in the conduct of the enterprise. Opinion In the aspects that petitioner's wife contributed neither outside capital nor services to the business; that she took no part in its direction; that the domination over the business exercised by petitioner appears to have continued after the gift to the wife in unchanged completeness; and that the income in question was the product of petitioner's services and the capital already in the business and under his complete control, the present facts are similar to those in , affirmed (C.A., 2nd Cir.), . In addition, we are unable to find from the record that the wife actually received [1] or could have received [2] any *9 of the proceeds of the business except at the will of petitioner. See H. V. Funai, 13 T.C. - (Nov. 2, 1949). Under all the circumstances, cf. , we conclude that petitioner was essentially a sole proprietor before and after the gift, , and, as set forth in our ultimate finding of fact, that he did not actually intend to join with his wife as a partner in the operation of the business from which the income was derived.
*10 Allocation of the income as between petitioner and his wife differently from that established by their agreement is not permissible under the doctrine of . Decision will be entered for the respondent. Footnotes
1. We are unwilling to reach the factual conclusion that petitioner's wife actually withdrew any of the business income. No evidence corroborative of the bare statements was produced, such as bank books, mortgages, corporate records and the like; and certain documentary evidence, as for example petitioner's claim of his father-in-law as a dependent, with no such claim by the wife, tends to contradict her testimony that some withdrawals were used by the wife to render assistance to her parents. See Balestrieri & Co. v. Commissioner, (C.A., 9th Cir.) - Fed. (2d) - (November 15, 1949). ↩
2. "Under the broad managerial powers carefully retained by * * * [plaintiff] under the provisions of the partnership documents he had the right to determine the amount and time of disbursements to his wife and children. This control of the partnership income by the plaintiff seriously detracts from his contention that the other family members enjoyed the free use of the income from and owned the donated capital." ( .)↩